WILLIS J. PERKINS *v.* MAUREPAS MILLING COMPANY.

[40 South. Rep., 993.]

1. CONTRACTS. *Action for breach. Pleading.*

> Where plaintiff gave defendant's agent a written order for machinery to be manufactured and shipped to him, the order containing a provision making it subject to defendants approval, a declaration for the breach thereof is demurrable if it fail to charge that defendant had approved the order.

2. SAME. *Time for performance.*

> A contract to ship an engine "as soon as possible, about thirty days," does not fix any definite time for its performance.

3. SAME. *Delays. Excepted causes.*

> In a suit for delay in the performance of a contract, by its terms subject to strikes, accidents and unavoidable causes, the declaration must negative the existence of these causes of delay.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

The Maurepas Milling Company, the appellee, was plaintiff in the court below; Perkins, the appellant, trading under the assumed trade name of "Grand Rapids Gas Engine & Yacht Company," was defendant there. The defendant demurred to the declaration, assigning several grounds therefor, the nature of which is disclosed by the opinion of the court; the demurrer was overruled, and on the trial a judgment in plaintiff's favor was rendered from which the defendant appealed to the supreme court.

The declaration charged that the defendant was indebted to the plaintiff in the sum of $1,989; that defendant entered into a written contract to manufacture for the plaintiff an engine, which was to be completed and installed in the defendant's boat; the order for the engine, given by defendant to the salesman of

the plaintiff, was made an exhibit to the declaration, and it was alleged to be the contract relied upon; and the declaration further averred that the engine was to be shipped "as soon as possible, about thirty days" from the date of the signing of the order; and it charged that the defendant violated the contract in not shipping the engine in about thirty days; the delay amounting to three months; that the engine and appurtenances were not the same as ordered, and not a compliance with the contract, but the declaration did not point out or specify wherein it failed to come up to the contract; the declaration also charged that upon the arrival of the engine in New Orleans the defendant failed to install the engine in the boat as he had agreed to do, though the plaintiff offered to pay the amount which by the contract he had obligated himself to pay. Plaintiff alleged that it was damaged by delay incident to the failure to receive and install the engine ordered, and set out certain expenses incurred in hiring boats and crews to do the work of the boat in which the engine was to be installed.

The order, which was made an exhibit to the declaration, is as follows:

"EXHIBIT TO DECLARATION.

"*Made in Duplicate.*

"NEW ORLEANS, LA., November 25, 1902.

"*Grand Rapids Gas Engine & Yacht Co., Grand Rapids, Mich.—Gents:* You will please manufacture for us [me] and ship as soon as possible, about thirty days, to your address at New Orleans, state of Louisiana, the items specified, and ship via best route Illinois Central Railroad, for which we agree to pay you as follows: four hundred ($400.00) dollars cash on signing of order, which is hereby acknowledged;· $800.00 in six months' note from date of shipment; $400.00 on receipt of goods and bill of lading. Settlement for deferred payments, if any, to be made by (property clause) notes, with interest at eight per cent per annum before due and ten per cent after due.

"(*a*) This contract order is taken subject to the approval of the Grand Rapids Gas Engine & Yacht Co. and subject to all strikes, accidents and delays unavoidable or beyond control of said company.

"(*b*) Acceptance of machinery by purchaser when delivered by the transportation company is understood to constitute a waiver of all claims for damages.

"(*c*) Title and ownership of all property herein ordered shall remain in the Grand Rapids Gas Engine & Yacht Co. until the full purchase price is paid, and the property herein ordered shall not be removed from the state of Louisiana without the written consent of the Grand Rapids Gas Engine & Yacht Co. until payment is made in full.

"(*d*) After this order is accepted by the Grand Rapids Gas Engine & Yacht Co. it shall not be subject to cancellation or withdrawal.

"(*e*) All property that is herein ordered, purchased, and sold is subject to the warranty and agreement: That any part shipped as herein ordered, showing defective material or improper workmanship within one year from shipment, will be replaced f. o. b. cars, Grand Rapids, Mich., upon receipt of the alleged defective part at our shop, charges prepaid, if on examination the fault is found inherent therein. That the engine here sold, if properly run and rightly managed, will develop the horse power it is rated at. If upon trial said engine fails to operate as stated, the operator following intelligently the printed directions furnished, then written notice stating wherein it so fails is to be given immediately by the purchaser to the Grand Rapids Gas Engine & Yacht Co., at their home office, and time allowed them to receive the same and remedy the trouble. This may be done by giving further instructions by letter or sending operator, the Grand Rapids Gas Engine & Yacht Co. to use their discretion in the matter. The failure to so notify the Grand Rapids Gas Engine & Yacht Co., in case of any trouble, shall be deemed a waiver of

all rights of second party under the warranty. If expert is sent and on examination finds the trouble, if any, is caused by improper installation or operation of the machinery, or neglect to properly follow the printed instructions furnished by the Grand Rapids Gas Engine & Yacht Co., then the second party is to pay the first party all costs incurred by said expert and five dollars per day wages while expert is absent from their factory. It is understood and agreed that the Grand Rapids Gas Engine & Yacht Co. shall not be held responsible for damages by reason of defects in goods ordered, except to the extent of remedying actual inherent faults, if any, therein.

"H. S. MERRIMAN, *Salesman.*

"[Here follows description of engine.]

"This engine to be ready to run and complete in every way, with friction clutch for propelling, including tank 175 gallons and bilge pump, and including installing of engine in boat at New Orleans. The said Maurepas Milling Company shall dry dock their boat, named Sunshine, it being forty feet long over all and eight foot beam, at their own expense at New Orleans. Price for whole, including freight and installation, $1,600.

"MAUREPAS MILLING CO.,

"J. J. MANSON, *President.*"

*S. A. Witherspoon,* for appellant.

The declaration fails to show any breach of the contract, even if the unaccepted order be considered a contract. It attempted to set up three breaches thereof, and neither one of them is successfully done.

The principal breach complained of is that the contract was made on the 25th day of November; that it obligated the appellant to ship the engine and appurtenances within thirty days from the date of the order, and that instead of shipping the engine in said thirty days, which would have been the 25th day of December, 1902, he did not ship it until the 18th of March,

1903, and that, therefore, there was a breach of the contract as to the time of shipment amounting to ninety days. But when we turn to the alleged contract we find that it does not obligate the appellant to ship the engine as alleged within thirty days, but that the obligation was to ship the engine as soon as possible—about thirty days—and that the order was taken subject to all strikes, accidents and delays unavoidable, or beyond the control of the appellant, and that when the engine should be delivered to the transportation company and accepted by the appellee, this should constitute a waiver of all claims for damages. None of these provisions of the alleged contract are set out in the declaration, and none of them are alleged to have been breached. It is not alleged that the delay was not due to accidents, strikes, or that the delay was not unavoidable or beyond the control of the appellant. Unless this was true there was no breach of the contract in this alleged delay in the time of shipment, and the declaration utterly fails to show the facts necessary to constitute a breach of the contract in so far as the time of shipment is concerned. The declaration fails to allege that the contract was to ship the engine as soon as possible, and fails to allege that it was proper for the appellant to have shipped it sooner.

It is very clear from the terms of the order itself that the parties did not contemplate that any such delay as complained of in the declaration should have been considered a breach of the contract for which damages are recoverable, because the contract expressly provides that acceptance of the machinery from the transportation company should be a waiver of all claim for damages. It was, therefore, impossible that the appellee could have the right to accept this engine and at the same time claim that he had been damaged by a delay in shipment. This is contrary to the express terms of the order itself.

If appellee thought that there was an unreasonable delay, then his only remedy was to rescind the contract, because he had

bound himself by the very terms of the contract to waive all claims for damages whenever he accepted the engine. In the face of these express provisions of the order itself, the declaration fails to show any breach of the contract in so far as it alleged that there was a delay of ninety days in the shipment of the engine.

In the second place the declaration pretends to set up a breach of the contract in that the goods which the appellant shipped on the 18th of March, 1903, were not the goods ordered and were not a compliance with the contract between the parties; but the declaration fails to specify in what particulars the engine and appurtenances, which it admitted were shipped, varied from those described in the order. Having failed to state the facts in this particular, the allegation that there is a variance or difference between the goods ordered and those shipped is a mere conclusion of the pleader, and it is impossible for the court to tell from the allegations of the declaration whether the goods shipped were different from those ordered or not, and for this reason the declaration fails to show any breach of the contract in this particular.

But even if the goods shipped had been shown by the averments of the declaration to be different from those ordered, it would not constitute any breach of the contract, because the contract expressly provides for such a condition of things, and points out the remedy. It provides that if there were any defect, either in the material or the workmanship used in the construction of the engine, then such defective part of the engine should be returned to the appellant, and he bound himself to replace it. It was further provided that if the engine should fail to operate as agreed on, notice was to be served upon the appellant and time allowed them to remedy the trouble, and that a failure to so notify the appellant should be deemed a waiver of all rights of the appellee under the contract. It was further provided that if upon examination and upon the effort of the

appellant to remedy any defect or trouble about the machine it appeared that the trouble arose through any fault of the appellee, then the latter was to pay all costs incurred by the appellant in his effort to remedy the trouble. The contract concludes by agreeing expressly that the appellant should not be held responsible for damages by reason of defects in the goods ordered, except to the extent of remedying actual inherent faults, if any, therein.

It is perfectly manifest, therefore, that these two litigants expressly provided against any suit for damages on account of improper workmanship or defective material used in the construction of the goods, and the contract not only provides how any such trouble either as to the workmanship or as to the material shall be remedied, but its last clause expressly provides that the appellant should not be liable for any damages on account thereof, and only responsible to the extent of remedying the defect. It is, therefore, out of the question to talk about sustaining this declaration by reason of its vague allegations that the goods shipped were not the same as the goods ordered.

The third effort of the appellee, to show a breach of contract in the declaration, refers to the installation of the engine. It alleges that the engine arrived in the city of New Orleans on the 7th day of April; that the appellant was bound by its contract to install the same, and that it did refuse and fail to install the engine in the boat as agreed upon. The declaration further alleges that at the time the engine arrived in New Orleans, on the 7th day of April, plaintiff was ready and able and willing, and, in fact, offered to comply with the contract by paying to the appellant the $400 which was to be paid upon receipt of the bill of lading, and also to execute and sign a note for $800 in accordance with the terms of the contract. This is another instance in which the appellee seeks to conceal and avoid the real issue in the case by vague and indifferent allegations. The court will notice that it did not allege that it

did in point of fact offer and tender to the appellant a note for $800, but that it offered to sign and deliver the note in accordance with the terms of the contract. What the terms of the contract with reference to the note as understood by the appellee are the declaration fails to show. It clearly appears from the testimony in the case that the appellee's conception of the requirements of the contract as to the delivery of this note was that it should be executed and delivered only after the engine should be installed and after the engine should prove satisfactory to the appellee.

If the allegation in the declaration means the same thing which the appellee contended on the trial of the case, necessarily that it was willing and offered to execute this note only after the engine had been installed in the boat and had proven satisfactory to it, then the declaration fails to show any breach of the contract as to the installation of the engine, because there is nothing in the contract which requires the appellant to wait for the installation of the engine and the satisfaction of the appellee before it received the note. The fact is that the contract shows clearly that a settlement for the engine in cash and by note was to be made at the time the engine was delivered to the appellee.

*Fewell & Son,* and *J. Zach. Spearing,* for appellee.

The main if not in fact the only real question to be determined is the quantum of damages sustained by the appellee, and we feel satisfied that after consideration of the case this court will conclude that if there is any error in the verdict of the jury it consists in not allowing sufficient damages to the appellee.

We take it that there will be no denial that the rights of the parties in this regard will be controlled entirely by the law of Louisiana, under which it does not seem to us there can be any doubt as to the right to recover damages; but, of course, this court will be the final judges as to the amount thereof.

The law of Louisiana on the subject is found in art. 1930 and the following articles of the revised civil code of that state of 1870. It is not out of place here to remark that the numbers of the articles of the present code are different from the code of those prior to 1870, which explains the discrepancy in the numbers of the articles referred to in the cases which we will subsequently cite.

Article 1930 provides: "The obligations of contract extending to whatsoever is incident to such contracts, the party who violates them is liable, as one of the incidents of his obligations, to the payment of the damages which the other party has sustained by his default."

Article 1934, so far as it is applicable to the case at bar, reads: "Where the object of the contract is anything but the payment of money, the damages due to the creditor for its breach are the amount of the loss he has sustained, and the profits of which he has been deprived, under the following exceptions and modifications:

"First—When the debtor has been guilty of no fraud or bad faith, he is liable only for such damages as were contemplated, or may reasonably be supposed to have entered into the contemplation of the parties at the time of the contract. By bad faith in this and the next rule is not meant the mere breach of faith in not complying with the contract, but a designed breach of it from some motive of interest or ill will.

"Second—When the inexecution of the contract has proceeded from fraud or bad faith, the debtor shall not only be liable to such damages as were, or might have been foreseen at the time of making the contract, but also to such as are the immediate and direct consequences of the breach of that contract; but when there is fraud, the damages cannot exceed this."

Article 2316 of the same code reads: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

The supreme court of that state has had occasion to pass
upon cases similar to the one at bar and had always held in
favor of the right to claim damages under like circumstances,
and even under less aggravated circumstances.

One of the earliest cases in which the court of that state
settled the question is *Goodloe* v. *Rogers,* 9 La. Ann. Code, 273.
In that case the plaintiffs had bound themselves to build and
put in operation on the plantation of the defendant a sugar
mill and steam engine, which they agreed to deliver on a certain
day. The defendant agreed to do certain hauling and furnish
a given amount of lumber. The court quoted the articles herein
above cited, and held that it was evident that it entered into
the contemplation of the parties that the mill and engine were
to be used in grinding the sugar crop on defendant's plantation
for the following year, and that therefore the parties must have
contemplated that the delay in making the crop or its failure
would damage the defendant to the amount of the total or par-
tial loss of the crop as the case might be, and then the court went
on to say, at p. 276:

"For such loss, we consider the plaintiffs under their con-
tract, would be liable according to the law cited. Applying this
law to the facts of this case, we find in it proof:

"1. Plaintiffs were guilty of negligence in making a right
hand engine instead of a left hand engine, which their written
contract called for.

"2. They failed to execute their contract, in this, that the
castings had defects which caused them to break when the mill
was put in operation.

"3. The plaintiffs were guilty of want of skill in putting up
the sugar mill out of line, by which it was strained and broken.

"4. The alterations and repairs necessary for changing the
engine from a right hand to a left hand one, and for repairing
the breakage, etc., caused a delay of twenty-one days in the
grinding of defendant's crop.

"5.   Defendant was compelled to windrow his crop to preserve it from the frost, by reason of the above delay, occasioning a deficiency of sugar, estimated by witnesses at from ten to forty per cent of the crop.

"6.   Defendant paid, in consequence of the delay, twenty-one days' extra wages of six hired hands, at one dollar per day, as well as extra time of an engineer.

"Under the law and the evidence, we consider the defendant entitled to recover damages for his loss of crop and extra wages paid, in consequence of the delay for alterations and repairs in putting the sugar mill and steam engine in operation, said delay being caused by plaintiff's fault, and by their failure to execute their contract."

Truly, J., delivered the opinion of the court.

The demurrer to the declaration was well taken.   While there are several alleged breaches of the contract attempted to be set out in the declaration, still the entire statement of damages said to have been suffered, the real cause of action on which the suit is based, is dependent solely upon the alleged breach or predicated of the alleged wrongful delay in making shipment and delivery of the engine ordered.   But the declaration fails to declare this breach with sufficient clearness and precision.   It does, it is true, allege that the contract was broken by a failure to ship and deliver the engine within the time stipulated, and that certain damages were caused thereby.   But the facts stated do not sustain this conclusion.   The written order, the initial step in this transaction, expressly recites that shipment of the engine is to be made "as soon as possible, about thirty days," and further stipulates that "this contract order is taken subject to the approval" of the appellant.   This order in its entirety is expressly made part of the declaration and is to be considered in connection therewith.   The order was preliminary merely. The consummation of the contract was dependent on an affirmative ratification by the appellant.   Yet the declaration fails

to aver any approval or acceptance of the order by the appellant when the same in due course of business was transmitted to him by his salesman and representative. This was absolutely indispensable to the proper and legally sufficient statement of a cause of action. No right of any kind could possibly have accrued to the appellee under the order here under review until it had reached the appellant and had received his approval. It required the acceptance of the appellant to vitalize the order into a definite and enforceable contract. The order itself shows no such acceptance or approval and the declaration fails to aver its existence.

The declaration is faulty in still another respect. There was no definite date of shipment fixed by the order given by the appellee. The statement that the engine is to be "shipped as soon as possible, about thirty days," must be interpreted in connection with the other recitation that the order was taken "subject to the approval of" the appellant. The recital in the order as to the date of shipment was not only not the fixing of a day certain by which shipment must be made, but it, like the entire order, was of no legal effect until it had met with the approval of the appellant. There could naturally be no binding agreement as to a date of shipment, when the decision of whether there should be a shipment at all at any time depended entirely upon the judgment of another person not then consulted, and upon the happening of another event—*i. e.,* that the order should meet with the approval of the appellant—and the declaration fails to show that the contingency, upon the happening of which shipment would be made, ever arose. The contention that the provision that shipment was to be made "as soon as possible, about thirty days," fixed a definite and determined day of shipment, thirty days from date of order, does violence to the other recitals of the order, and is at variance with the manifest intent of the parties as gathered from the context of the entire instrument. It might happen that the order in due

course of business might not reach the appellant until after the expiration of thirty days from its date, when a compliance with this provision (according to the construction of appellee) would be impossible, or that upon its receipt the order would be absolutely rejected, so that no shipment would ever be required. If to this it be said that the phrase means "thirty days from date of acceptance of order," the inescapable reply is that the declaration fails to aver such approval or acceptance.

The declaration is defective in still another vital particular. The order expressly provides that even after it has met with the approval of the appellant, and thereby become a legal and binding contract, still the shipment is, nevertheless, "subject to all strikes, accidents, delays unavoidable or beyond control" of the appellant. And yet the declaration fails to negative the existence of these recognized causes of excusable delay. It might well be that the appellant could concede the existence of a legal contract; could concede that under its terms shipment was to be made at a stated time, and still the declaration would state no case, because it does not charge that the delay was caused by the negligence or wrongdoing of the appellant, or that it was not caused by one of the excepted reasons. Conceding the contract, the agreement to ship at a certain date, and a failure to so ship, still the appellant would not be liable if such delay was caused by "strikes, accidents, delays unavoidable or beyond the control" of the appellant. It is no answer to this to say that proof upon the trial might or might not disclose that none of these causes of excuse in fact existed. The demurrer challenges the sufficiency of the declaration construed in connection with the order expressly made a part thereof. Tested by this rule the declaration is faulty.

*The cause is reversed, demurrer sustained, and cause remanded, with leave to the appellee to amend within thirty days from filing of mandate in court below.*